Filed 7/23/14  P. v. Lorenz CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO


THE PEOPLE,

    Plaintiff and Respondent,

v.

PATRICK RICHARD LORENZ II,

    Defendant and Appellant.

E059337

(Super.Ct.No. SWF10000963)

OPINION


APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.

Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

In May 2013, a jury found defendant Patrick Richard Lorenz II guilty of one count of residential burglary and one count of commercial burglary (Pen. Code, § 459, counts 1 & 2), and two counts of vehicle theft with a prior (Pen. Code, § 666.5, subd. (a), Veh. Code, § 10851, counts 3 & 5). The jury found true defendant was out on bail at the time he committed the offenses alleged in counts 1 and 5 (Pen. Code, § 12022.1), and that the residence was occupied at the time of the burglary (count 1) (Pen. Code, § 667.5, subd. (c)(21)). Finally, the jury found true that defendant suffered one prison prior (Pen. Code, § 667.5, subd. (b)) and four strike priors (Pen. Code, §§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)).

On July 22, 2013, defendant filed a motion for new trial or in the alternative to grant a *Romero*[1] motion. Both motions were denied on August 2, 2013. The trial court also dismissed counts 4 and 6 in the interests of justice.[2]

Defendant was then sentenced to a total determinate term of 16 years four months in state prison and an indeterminate term of 25 years to life in state prison. Defendant was given a total of 1,309 days of credit for time served, and he was ordered to pay restitution and various fines and fees. Defendant timely appealed.

---

[1] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[2] At sentencing, the trial court stated that not guilty verdicts were entered on counts 4 and 6, but there are no signed verdict forms from the jury and there is nothing in this record to indicate that the jury rendered any verdicts on counts 4 and 6. The sentencing minute order shows counts 4 and 6 were "dismissed in the interest of justice (1385 PC)."

FACTS

A. *Evidence for Counts 2 and 3*

On April 21, 2010, around 4:20 a.m., the residents of an upstairs apartment on South Main Street in Lake Elsinore heard a loud bang or crash coming from a real estate office below. When the residents went downstairs to investigate, one of them saw defendant inside the office pulling on something that was attached to a wall. Defendant looked in the direction of the resident, smiled, dropped what he was holding, and ran out of the office. He got into a car that was parked in front of the office. As the vehicle was driving away, one of the residents called 911, and a deputy sheriff arrived quickly.

The residents told Deputy Constantin that the vehicle defendant drove off in was a small, light gray sedan, and they pointed in the direction in which defendant fled. The deputy drove off in search of the vehicle and, soon thereafter, he located a light gray Ford Escort matching the description given to him by the residents. While the deputy followed the Ford sedan, the driver drove past the real estate office. One of the residents recognized the Ford, as it drove by, as the same vehicle defendant drove off in earlier. The driver of the Ford accelerated when the deputy tried to pull it over. After a high-speed chase, the driver of the Ford plunged the vehicle into Lake Elsinore. Defendant and a female suspect emerged from the Ford as it sank.

The co-owner of the building where the real estate office is located went to the office when she learned that an alarm inside had gone off. She saw that the front door had been kicked in and was badly damaged, and that someone had tried to remove a docking station from a desk. She had not given anyone permission to enter the office that morning.

Deputy Parrish arrived at the lake to assist in the investigation and recognized the female suspect as someone he had recently given a ride home. After learning that neither defendant nor the female were registered owners of the Ford Escort, the deputy went to the home of the registered owner, which was close to where he had previously dropped off the female suspect. The owner of the Ford had not yet noticed that her vehicle was missing. When she looked around her home, she also noticed that her car keys, purse, cellular telephone, a television, and some jewelry were missing from the apartment. She had not given anyone permission to take her vehicle or other items.

B.     *Evidence for Count 5*

On May 11, 2010, around 11:30 p.m., an employee at the Inland Valley Medical Center walked outside during a break and noticed that her 1994 maroon Saturn was missing. Since she had not given anyone permission to drive the vehicle, she reported it stolen. Deputy Doyle responded to the location and took the victim's statement.

At the same time, Investigator Cole received a broadcast radio dispatch regarding a stolen maroon Saturn. Just after receiving the broadcast, Cole heard screeching tires. When she looked up, Cole saw a vehicle driving away and recognized the distinctive headlights of a Saturn. Cole followed the vehicle and, when she eventually pulled the Saturn over, identified defendant as the driver. Deputy Doyle drove the owner of the stolen vehicle to where Cole had pulled defendant over; the owner of the Saturn identified the vehicle as belonging to her. The owner did not know defendant, and she had never given defendant permission to drive her vehicle.

C.      *Evidence for Count 1*

On May 27, 2010, around 11:30 a.m., the resident of an apartment on Samantha Lane in Temecula, who was home alone, heard a noise coming from his daughter's bedroom and went to investigate. He saw a man facing a desk where his daughter's computer was located. The victim tried to call 911, but his phone was not working. He then left the apartment, ran to the management office, and asked the manager to call the police.

Deputy Simmons responded. The deputy contacted the victim outside the apartment. He was told someone was in the victim's apartment. After getting a description of the intruder, he went to the apartment to investigate. The front and back doors of the apartment were locked, but the deputy saw that the screen to a back window was on the ground and the window was partly open. The deputy then saw something out of the corner of his eye. When he investigated, he saw a man, on the other side of a fence, walking away briskly across a parking lot. The deputy testified, "Maybe that's

5

[the suspect]. Maybe [i]t's not. Let me go back to the apartment, because if there's somebody still in the apartment, I don't want to be looking over this fence and [have] somebody . . . behind me in the apartment that [was] just broken into . . . ."

Deputy Simmons and the victim entered the apartment. The victim noticed that his daughter's computer and his laptop computer had been moved and placed on top of the kitchen table. He also saw that the living room television had been disconnected from the wall, and that some shelves in his daughter's room had been knocked over.

Partial palm prints Deputy Simmons retrieved from the window of the victim's apartment matched defendant. A Mercedes-Benz registered to defendant's father was parked in a carport near the victim's apartment. The apartment leasing company checked their records and told the deputy the vehicle was not registered to that particular carport. Defendant's father testified that he had not given defendant permission to drive the Mercedes-Benz.

DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

6

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

KING
J.